**14-1175(L), 14-1177**

In The

# United States Court of Appeals
### For The Federal Circuit

## SHIELDMARK, INC.,

*Plaintiff – Appellant*,

**v.**

## INSITE SOLUTIONS, LLC,

*Defendant – Appellee.*

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
IN CASE NOS. 1:13-CV-00572-DCN, 1:12-CV-00223-DCN,
JUDGE DONALD C. NUGENT.**

_____

## CORRECTED BRIEF OF APPELLEE

_____

Ray L. Weber
Laura J. Gentilcore
RENNER, KENNER, GREIVE, BOBAK, TAYLOR & WEBER
106 South Main Street, Suite 400
Akron, Ohio 44308
(330) 376-1242 (Telephone)
rlweber@rennerkenner.com
ljgentilcore@rennerkenner.com

*Counsel for Appellee*

THE LEX GROUP^DC ♦ 1825 K Street, N.W. ♦ Suite 103 ♦ Washington, D.C. 20006
(202) 955-0001 ♦ (800) 856-4419 ♦ Fax: (202) 955-0022 ♦ www.thelexgroup.com

FORM 9.  Certificate of Interest

---

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

ShieldMark, Inc.     v.     InSite Solutions, LLC

No. 14-1175

## CERTIFICATE OF INTEREST

Counsel for the ~~(petitioner)~~ ~~(appellant)~~ ~~(respondent)~~ (appellee) ~~(amicus)~~ ~~(name of party)~~ Appellee, InSite Solutions, LLC, certifies the following (use "None" if applicable; use extra sheets if necessary):

1.     The full name of every party or amicus represented by me is:

InSite Solutions, LLC

2.     The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

InSite Solutions, LLC

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

None

4. ☑   The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Renner, Kenner, Greive, Bobak, Taylor & Weber Co., L.P.A.

01/08/2014
Date

/s/ Ray L. Weber
Signature of counsel

Ray L. Weber
Printed name of counsel

Please Note: All questions must be answered
cc:   Counsel of Record

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST

TABLE OF CONTENTS ..............................................................................i

TABLE OF AUTHORITIES ....................................................................iv

STATEMENT OF RELATED CASES ................................................. vii

APPELLEE'S STATEMENT OF THE CASE ........................................1

APPELLEE'S STATEMENT OF THE FACTS .......................................4

APPELLEE'S STATEMENT OF THE ISSUES ...................................12

SUMMARY OF THE ARGUMENT .....................................................14

ARGUMENT ..........................................................................................16

    I.     THE DISTRICT COURT PROPERLY CONSTRUED THE CLAIM TERM "DOUBLE SIDED ADHESIVE LAYER" IN CLAIM 2 OF THE '480 PATENT GIVEN THAT THE '480 PATENT DISTINGUISHES BETWEEN A "LAYER OF ADHESIVE" AND A "DOUBLE SIDED ADHESIVE LAYER" ..........................................................................16

          A.     Claim Construction—Relevant Principles ...............................16

          B.     Claim Construction—The '480 patent—Double Sided Adhesive Layer ......................................................................17

II.  THE DISTRICT COURT, HAVING PROPERLY
CONSTRUED THE CLAIM TERM "DOUBLE SIDED
ADHESIVE LAYER" IN CLAIM 2, AND  FINDING NO
DISPUTE THAT THE ACCUSED PRODUCTS DO NOT
HAVE THE "DOUBLE SIDED ADHESIVE LAYER" OF
CLAIM 2, PROPERLY CONCLUDED THAT THERE IS NO
GENUINE ISSUE  OF FACT FOR A JURY WITH RESPECT
TO WHETHER INSITE'S ACCUSED PRODUCTS
LITERALLY INFRINGE CLAIM 2 ................................................... 21

III.  THE DISTRICT COURT PROPERLY CONCLUDED THAT
THERE IS NO GENUINE DISPUTE OF MATERIAL FACT
FOR A JURY WITH RESPECT TO WHETHER INSITE'S
ACCUSED PRODUCTS INFRINGE CLAIM 2 UNDER THE
DOCTRINE OF EQUIVALENTS BECAUSE ALLOWING
"ADHESIVE" AS AN EQUIVALENT FOR "DOUBLE
SIDED ADHESIVE LAYER" WOULD VITIATE THAT
ELEMENT .......................................................................................... 22

IV.  BECAUSE THE DISTRICT COURT PROPERLY FOUND
THAT THERE IS NO GENUINE DISPUTE OF MATERIAL
FACT FOR A JURY WITH RESPECT TO WHETHER
INSITE'S ACCUSED PRODUCTS INFRINGE CLAIM 2
UNDER THE DOCTRINE OF EQUIVALENTS, NO
DISCUSSION OF THE FUNCTION-WAY-RESULT TEST
WAS NECESSARY .......................................................................... 24

V.    THE DISTRICT COURT PROPERLY CONSTRUED THE CLAIM TERM "SUBSTANTIALLY UNIFORM THICKNESS" OF CLAIM 5 OF THE '480 PATENT AND CLAIM 1 OF THE '292 PATENT AS "A LARGELY, BUT NOT NECESSARILY WHOLLY,  UNIFORM DISTANCE BETWEEN THE UPPER SURFACE AND THE LOWER SURFACE WITHOUT SIGNIFICANT DEVIATIONS, PROTRUSIONS OR STEPS" GIVEN THAT SHIELDMARK CONTENDED AND THE PROSECUTION HISTORY CONFIRMS THAT THE LIMITATIONS WERE PART OF THE DEFINITION AS UNDERSTOOD BY THE PATENT OFFICE AND WERE NECESSARY TO OVERCOME PRIOR ART AND OBVIOUSNESS ISSUES RAISED BY THAT OFFICE ......................................................................... 26

A.    Claim Construction—Relevant Principles ................................ 26

B.    Claim Construction—The '480 patent—Substantially Uniform .................................................................................. 27

C.    Claim Construction—The '292 Patent—Substantially Uniform .................................................................................. 31

D.    InSite's Accused Products Do Not Infringe Either Claim 5 of the '480 patent or Claim 1 of the '292 patent Because They Have a Significant Step And Therefore Do Not Satisfy The Limitation "Substantially Uniform Thickness" As Properly Construed .......................................... 32

CONCLUSION ...................................................................................... 36

CERTIFICATE OF FILING AND SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Autogiro Co. of America v. The United States,*
384 F.2d 391 (Ct. Cl. Oct. 13, 1967) ............................................................17

*Bates v. Coe,*
98 U.S. 31, 25 L. Ed. 68 (1878) ..................................................................16

*Bell Atl. Network Servs., Inc. v. Covad Communications Group, Inc.,*
262 F.3d 1258 (Fed. Cir. 2001) ..................................................................23

*Brown v. 3M,*
265 F.3d 1349 (Fed. Cir. 2001) ..................................................................27

*CAE Screenplates, Inc. v. Heinrich Fiedler GmbH & Co. KG,*
224 F.3d 1308 (Fed. Cir. 2000) ..................................................................17

*Cephalon, Inc. v. Watson Pharms., Inc.,*
707 F.3d 1330 (Fed. Cir. 2013) ..................................................................35

*D.M.I, Inc. v. Deere & Co.,*
755 F.2d 1570 (Fed. Cir. 1985) ..................................................................17

*Datamize LLC v. Plumtree Software, Inc.,*
417 F.3d 1343 (Fed. Cir. 2005) ..................................................................32

*Deere & Co. v. Bush Hog, LLC,*
703 F.3d 1349 (Fed. Cir. 2012) ..................................................................24

*Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.,*
469 F.3d 1005 (Fed. Cir. 2006) ..................................................................24

*Freedman Seating Co. v. American Seating Co.,*
420 F.3d 1350 (Fed. Cir. 2005) ..................................................................21

iv

*Kustom Signals, Inc. v. Applied Concepts, Inc.*,
    264 F.3d 1326 (Fed. Cir. 2001) ...................................................21

*Laitram Corp. v. Rexnord, Inc.*,
    939 F.2d 1533 (Fed. Cir. 1991) ...................................................17

*Lemelson v. Gen. Mills, Inc.*,
    968 F.2d 1202 (Fed. Cir. 1992) ......................................... 17, 26-27

*Lockheed Martin Corp. v. Space Sys./Loral, Inc.*,
    324 F.3d 1308 (Fed. Cir. 2003) ...................................................23

*Markman v. Westview Instruments, Inc.*,
    52 F.3d 967 (Fed. Cir. 1995)(en banc), *aff'd*,
    517 U.S. 370, 116 S. Ct.1384, 134 L. Ed. 2d 577 (1996) .............1, 16, 17, 27

*Microsoft Corp. v. Multi-Tech Sys. Inc.*,
    357 F.3d 1340 (Fed. Cir. 2004) ............................................. 31-32

*Ormco Corp. v. Align Technology, Inc.*,
    498 F.3d 1307 (Fed. Cir. 2007) ...................................................32

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) .....................................16, 17, 26, 27

*Standard Oil Co. v. Am. Cyanamid Co.*,
    774 F.2d 448 (Fed. Cir. 1985) ....................................................16

*Tandon Corp. v. U.S. Int'l Trade Comm'n*,
    831 F.2d 1017 (Fed. Cir. 1987) ...............................................17, 20

*Texas Digital Sys., Inc. v. Telegenix, Inc.*,
    308 F.3d 1193 (Fed. Cir. 2002) ...................................................27

*Vitronics v. Conceptronic, Inc.*,
    90 F.3d 1576 (Fed. Cir. 1996) ................................................16, 27

*Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*,
    520 U.S. 17, 117 S. Ct. 1040, 137 L. Ed. 2d 146 (1997) .................21, 22, 24

## STATEMENT OF RELATED CASES

No other appeal in or from the same civil action or proceeding in the lower court or body was previously before this or any other appellate court. No other case is known to counsel to be pending in this or any other court that will directly affect or be directly affected by this court's decision in the pending appeal.

## APPELLEE'S STATEMENT OF THE CASE

ShieldMark, Inc. ("ShieldMark"), filed a complaint alleging ownership of U.S. Patent No. 8,088,480 ("the '480 patent") and charging InSite Solutions, LLC ("InSite") with infringement of that patent by its making, using, offering to sell, selling within the United States, and/or importing into the United States, adhesive tape sold under the names "Superior Mark Tape" and "Last Mark Aisle Marking Tape." (JA 59)(Case No. 1:12-cv-00223, R. 4, Amended Complaint). InSite answered, denying infringement, asserting affirmative defenses including non-infringement, invalidity and unenforceability, and counterclaiming for declaratory judgments of non-infringement, invalidity and unenforceability. (JA 414)(R. 26, Answer, Affirmative Defenses and Counterclaims in Response to Amended Complaint).

The parties proceeded under the Local Patent Rules of the Northern District of Ohio, filing Opening Briefs on Claim Construction on October 24, 2012 (JA 80; JA 102)(R. 41, InSite's Opening Brief on Claim Construction & R. 42, ShieldMark's Opening Brief on Claim Construction) and Responsive Briefs on November 28, 2012 (JA 135; JA 145)(R. 49, InSite's Responsive Brief & R. 50, ShieldMark's Responsive Brief). A *Markman* hearing was held on January 11, 2013. (JA 991; JA 1346)(R. 53, Minutes of Proceedings, and R. 29, Transcript of Proceedings).

The district court issued its claim construction order on February 14, 2013. (JA 159)(R. 54, Memorandum Opinion and Order).   The district court construed the term "double sided adhesive layer" of claim 2 of the '480 patent as "a layer of non-adhesive material with adhesive on both sides."  (JA 172)(R. 54 at PageID #1144).  The district court construed the term "substantially uniform thickness" of claim 5 of the '480 patent as "a largely, but not necessarily wholly, uniform distance between the upper surface and the lower surface without significant deviations, protrusions, or steps."  (JA 172)(R. 54, Memorandum Opinion and Order, PageID #1144).

On March 15, 2013, ShieldMark filed a second complaint against InSite, alleging ownership of U.S. Patent No. 8,343,292 ("the '292 patent") and charging InSite with infringement of that patent by its making, using, offering to sell, selling within the United States, and/or importing into the United States, the same two products. (JA 51)(Case No. 1:13-cv-00572, R.1, Complaint).  Because both cases involved the same parties and the same accused products, the second case was transferred to the first district judge as a related case.  (JA 1243)(Case No.1:13-cv-00572, R. 14, Transfer Order, PageID # 122).

On March 20, 2013, in view of the district court's claim construction, InSite filed a Motion For Summary Judgment Of Non-Infringement [of the '480 patent] (JA178)(R. 58) and Brief In Support (JA 180)(R. 59).  ShieldMark filed a

Memorandum In Opposition (JA204)(R. 72) to that motion on May 28, 2013, to which InSite replied on June 14, 2013 (JA 230)(R. 76).  Additionally, because the '292 patent was a continuation of the application that issued as the '480 patent, InSite filed a second Motion for Summary Judgment of Non-Infringement [of the '292 patent] (JA 242)(1:13-cv-572, R. 16) and Brief In Support (JA 244)(1:13-cv-572, R. 17) on September 11, 2013.  Oral argument was heard on both motions on October 22, 2013 (JA 1374; JA 1346)(R. 91, Minutes of Proceedings and R. 106, Transcript of Proceedings).

On November 20, 2013, the district court granted InSite's motions for summary judgment of non-infringement of independent claim 2 of the '480 patent under the doctrine of equivalents; literal non-infringement and non-infringement under the doctrine of equivalents of independent claim 5 of the '480 patent; and literal non-infringement and non-infringement under the doctrine of equivalents of claims 1-3 of the '292 patent.  (JA 9-10, 16-17)(R. 92, Memorandum Opinion and Order, PageID ##1764, 1765, 1771 & 1772).

On December 19, 2013, ShieldMark appealed the district court's orders granting InSite's motions for summary judgment of non-infringement of claims 2 and 5 of the '480 patent and claims 1-3 of the '292 patent (JA 1)(1:12-cv-223 & R. 92 & 1:13-cv-572, R. 23), and related judgment entries (JA20)(1:12-cv-223 & R. 93 & 1:13-cv-572 R. 24) in favor of InSite.

## APPELLEE'S STATEMENT OF THE FACTS

InSite, like ShieldMark, is a distributor of adhesive tape used as an alternative to painting floor lines in industrial environments. They are competitors. (JA 1230)(R. 76-1, Thomas R. Goecke Deposition Transcript, PageID #1560, ll. 13-18). Clifford A. Lowe, InSite's Managing Director, has been involved in the marking tape industry for more than 23 years, and has worked in all phases of the industry, including research and development, manufacturing, marketing and sales. (JA 191)(R. 59-1, Lowe Declaration, Exhibit A, PageID #1173, ¶¶ 1 & 2).

InSite previously distributed ShieldMark's "Mighty Line" brand of such tape, which ShieldMark has admitted is manufactured under the patents-in-issue (JA 400)(R. 12-1, Declaration of Thomas R. Goecke, PageID #56, ¶5). InSite currently manufactures and distributes two adhesive tapes sold under the names "Superior Mark Tape" and "Last Mark Aisle Marking Tape." (JA 191)(R. 59-1, Lowe Declaration, Exhibit A, PageID #1173, ¶4). In its Amended Complaint (JA 60-61)(R. 4, PageID ##16-17, ¶14), ShieldMark alleged that InSite infringes claims 2 and 5 of the '480 patent "by making, using, offering to sell, selling within the United States, and/or importing into the United States adhesive tapes including those presently sold under the name(s) 'Superior Mark Tape' and 'Last Mark Aisle Marking Tape.'" (JA61-62)(R. 4, Amended Complaint, Page ID ##17-18, ¶14). ShieldMark later limited these infringement allegations to InSite's "Superior Mark

Tape." (JA 992-995)(R. 68, Plaintiff's Final Infringement Contentions Pursuant to Local Patent Rule 3.10(b), PageID ##1256-1259). In its subsequently filed Complaint (JA 173-177)(1:13-cv-572, R.1, Complaint, PageID ## 1-5), ShieldMark alleged that InSite infringes claims 1-3 of the '292 patent by its "manufacture, use, sale and advertising of infringing 'Superior Mark' adhesive tape." (JA 175)(1:13-cv-572, R.1, Complaint, PageID #3, ¶¶ 15).

The '292 patent issued from a continuation of the patent application that issued as the '480 patent. The '480 patent and '292 patent have the same inventor, assignee, specification and drawing. (JA 1)(1:13-cv-572, R. 23, Memorandum Opinion and Order, PageID # 301). Claim 1 of the '292 patent is an independent claim; claims 2 and 3 depend from claim 1. (JA 31)(1:13-cv-572, R. 1-1, the '292 patent, PageID #11). Both claim 5 of the '480 patent and claim 1 of the '292 patent have the same claim limitation of "a polymer layer having…a substantially uniform thickness." (JA 27; 31)(R. 1-1, claim 5, col. 4, PageID # 7; 1:13-cv-572, R. 1-1, the '292 patent, claim 1, col. 4, PageID #11).

The accused tapes of InSite have a single layer of adhesive material with no interposed non-adhesive material. (JA 192)(R. 59-1, Lowe Declaration, Exhibit A, PageID #1174, ¶ 6). Dr. Jerry M. Serra, the expert retained by ShieldMark in these actions, admitted in his deposition that he had concluded that the accused products

do not have a layer of non-adhesive material with adhesive on both sides. (JA 1299)(1:13-cv-572, R. 19-1, Serra Deposition Transcript, PageID # 195, ll. 13-17).

The accused tapes have a polymer layer that is not characterized by a uniform distance between the upper surface and the lower surface. (JA 192)(R. 59-1, Lowe Declaration, Exhibit A, PageID #1174, ¶ 7). As shown in the cross-sectional views of the accused products of InSite (JA 194-195)(R. 59-1, Exhibits B, C, and D of tapes 2", 4" and 6" wide, PageID ##1176-1178), and as further attested in the Lowe Declaration (JA 192)(R. 59-1, Exhibit A, PageID #1174, ¶ 8), the accused products incorporate an extensive central recess defined between steps extending along the lateral edges of the underside of the polymer layer). Moreover, the polymer layer is characterized by tapered lateral edges that take the thickness of the polymer layer from a center thickness of 0.027" to an edge height of zero and do so through a transitional radius of 0.187" and a tapering angle of 22$^\circ$. (JA 192)(R. 59-1, Lowe Declaration, Exhibit A, PageID #1174, ¶ 9). A tapered and radiused lateral edge and an associated step and recess of the polymer

layer are shown



below:

See (JA 195)(R. 59-1, Exhibit C, PageID # 1177).

The recess, steps, radius and taper are both structurally and functionally significant. (JA 192)(R. 59-1, Lowe Declaration, Exhibit A, PageID #1174, ¶ 10). The recess defined between the steps is provided to maintain an adhesive for securing the product to a floor surface while precluding the adhesive from oozing out onto the floor beyond the product. (JA 193)(R. 59-1, Lowe Declaration, Exhibit A, PageID #1175, ¶ 11). The recess and steps are 0.005" deep, which is a significant 18.5% of the 0.027" thickness of the polymer layer. (JA 193)(R. 59-1, Lowe Declaration, Exhibit A, PageID #1175, ¶ 12). The non-uniform nature of the polymer layer is significant for at least the reasons that (a) the steps and recess provide a container for the adhesive so that the area beneath the tapered edges can lie flat against the floor, without a layer of adhesive lifting them from the floor where they might be engaged by pallets, or equipment such as forklifts, (b) the 22°

7

taper blends directly into the floor, with no flat abutting edge, helping to eliminate pallet dragging or equipment damage, and (c) the radiused transition of 0.187" further accommodates skids, pallets and equipment with minimal risk of damage. (JA 193)(R. 59-1, Lowe Declaration, Exhibit A, PageID #1175, ¶ 13).

In his deposition, the inventor, Mr. Goecke, testified that the accused products have "steps." (JA 1163-1164)(R. 76-1, Goecke Deposition Transcript, PageID ##1493-1494). He also testified to the "significance of the step feature, namely to "be a channel to where the adhesive is applied". (JA 1164)(R. 76-1, Goecke Deposition Transcript, PageID # 1494, ll. 12-15). He testified as to "deviations," in that the thickness of the accused product changes in the ramped area. (JA 1166)(R. 76-1, Goecke Deposition Transcript, PageID #1496). He testified that the purpose of the ramped area is to help skids slide across the tape rather than catch it. (JA 1166-1167)(R. 76-1, Goecke Deposition Transcript, PageID ##1496-1497).

During his deposition, Dr. Jerry M. Serra, the expert retained by ShieldMark for purposes of these litigations, acknowledged "the step" in the accused products. (JA 1327)(1:13-cv-572, R. 19-1, Serra Deposition Transcript, PageID # 223, ll. 7-16). He also admitted that he accepted Mr. Lowe's calculation that the height of the steps is 18.5% of the overall thickness of the accused product. (JA 1289)(1:13-cv-572, R. 19-1, Serra Deposition Transcript, PageID #185, ll. 19-21). Dr. Serra

did not choose to counter Mr. Lowe's conclusion of the functional significance of the steps in his expert report. (JA 1289-1290)(1:13-cv-00572, R. 19-1, Serra Deposition Transcript, PageID ##185, l.22-186, l. 5); See also, (JA 1)(R. 23, Memorandum Opinion and Order, PageID # 313).

During prosecution, ShieldMark introduced claim 2 at issue in these litigations as new claim 12. (JA 488)(R. 42-3, Prosecution History, 12 (new), PageID #533). ShieldMark's introduction of new claim 12 was a narrowing amendment as is seen by comparing application claim 1, the broadest original claim, with claim 12. (JA 197)(Compare R. 59-1, Patent Application Claims as Originally Filed, Exhibit E, PageID #1179 and (JA 488) R. 42-3, Prosecution History, 12 (new), PageID #533). Such comparison demonstrates that everything in claim 12 that differs from application claim 1, including "double-sided adhesive layer" is a subcategory of, and narrower than "adhesive."

ShieldMark acknowledges that during the prosecution of the '480 patent it amended the original claim issued as claim 5 to call for a "substantially uniform thickness" in response to a rejection in light of U.S. Patent Number 5,839,977 to Maurer. (JA 112)(R. 42, ShieldMark's Opening Claim Construction Brief, PageID #481). The Maurer reference describes an applique as including "steps." (JA 112)(R. 42, PageID #481). ShieldMark also argued that the abruptly increasing thicknesses of the steps failed to anticipate the amended claim. (JA 112)(R.42,

ShieldMark's Opening Claim Construction Brief, PageID #481). ShieldMark

characterized its argument as having been found to be "persuasive." (JA

112)(R.42, ShieldMark's Opening Claim Construction Brief, PageID #481,

referencing Exhibit A-2, Amendment B and Response to Office Action dated

January 12, 2006).

    Also during the prosecution of the '480 patent, ShieldMark acknowledges

having responded to a subsequent rejection in which the Patent Office determined

that it would be obvious to modify an applique with protrusions by removing the

protrusions to arrive at the recited "substantially uniform thickness." (JA 112)(R.

42, ShieldMark's Opening Claim Construction Brief, PageID #481). ShieldMark

overcame that rejection by equating "removing the protrusions" with "substantially

uniform thickness." (JA 112-113)(R. 42, ShieldMark's Opening Claim

Construction Brief, PageID ## 481-82, referencing Exhibit A-2, Pre-Appeal

Request for Review dated June 22, 2006).

    Additional argument was made by ShieldMark to the Patent Office as to

what the term "substantially uniform thickness" means in the context of the '480

patent through a declaration from an expert, Joseph T. Mausar. (JA 422-433)(R.

41-8, Exhibit 8, PageID ## 403-414). There, Mr. Mausar stated at ¶13:

> The chart on page 7 of the filed application indicates that 10
> measurements of the textured sample without liners averaged 65.4
> mils with a standard deviation of 0.5 mil. The standard deviation of
> 0.5 mil as a percentage of the indicated thickness is a 0.76% variation.

As 0.5 mil is one standard deviation, or 1 Sigma, 66% of all areas of the sample were within 0.5 mil in thickness. At a variation of 1.0 mils, a variation of 2.3%, this variation would equate to 3 Sigma or a 99+% of all areas of the sample were within 1.5 mils in thickness. **This indicates the substantial uniformity of thickness of the samples.** (Emphasis added).

## APPELLEE'S STATEMENT OF THE ISSUES

1.     Whether the district court properly construed the claim term "double sided adhesive layer" in claim 2 of the '480 patent, given that the '480 patent distinguishes between a "layer of adhesive" and a "double sided adhesive layer."

2.     Whether the district court, having properly construed the claim term "double sided adhesive layer" of claim 2 of the '480 patent, and finding no dispute that the accused products do not have the "double-sided adhesive layer" of claim 2, properly concluded that there is no genuine issue of fact for a jury with respect to whether InSite's accused products literally infringe claim 2.

3.     Whether the district court properly concluded that there is no genuine dispute of material fact for a jury with respect to whether InSite's accused products infringe claim 2 of the '480 patent under the doctrine of equivalents because allowing "adhesive" as an equivalent for "double sided adhesive layer" would vitiate that claim element.

4.     Whether the district court erred in not sending the case to a jury for consideration of the function-way-result test given that the district court properly found that allowing "adhesive" as an equivalent would vitiate the claim term "double sided adhesive layer" of  claim 5 of the '480 patent and claim 1 of the '292 patent.

5.     Whether the district court properly construed the claim term "substantially uniform thickness" of claim 5 of the '480 patent and claim 1 of the '292 patent as "a largely, but not necessarily wholly, uniform distance between the upper surface and the lower surface without significant deviations, protrusions or steps" given that ShieldMark contended and the prosecution history confirms that the limitations were part of the definition as understood by the Patent Office and were necessary to overcome prior art and obviousness issues raised by that Office.

## SUMMARY OF THE ARGUMENT

The disposition of both cases before the district court turned on the proper construction of two claim limitations: (1) "double sided adhesive layer" and (2) "substantially uniform thickness." The former was properly construed to mean "a layer of non-adhesive material with adhesive on both sides," and the latter to mean "largely, but not necessarily wholly, uniform distance between the upper surface and the lower surface without significant deviations, protrusions, or steps."

The adhesive layer of the claimed invention is described three different ways in the independent claims of the '480 patent, indicating three different meanings when applying the construction aid of claim differentiation. Resort to the patent specification shows a preferred embodiment employing as the adhesive element a "double sided carpet tape" that, in fact, comprises a layer of non-adhesive material with adhesive on both sides. This claim limitation in issue is clearly directed to this preferred embodiment and distinguishes from "a layer of pressure-sensitive adhesive" or simply "a layer of adhesive" as presented in the other independent claims of the '480 patent.

The adhesive element of the accused products does not include a layer of non-adhesive material, and any attempt to read that claim limitation on the accused products eviscerates the requirement of a "non-adhesive material" and renders the term "double sided" superfluous.

14

As to the claim limitation of "substantially uniform thickness," the prosecution history shows, and ShieldMark acknowledges, that this limitation was successfully argued before the Patent Office as meaning, at least in part, that there can be no protrusions or steps in the polymer layer.

The polymer layer of the accused products not only has a tapering edge, but also has the very steps precluded by the claim construction advanced by ShieldMark and precluded by the prosecution of the patents.  ShieldMark simply offered no evidence, nor could it, to counter the irrefutable fact that the polymer layer of the accused products is not "without significant deviations, protrusions or steps" to satisfy the "substantially uniform thickness" claim limitation.

The "all elements rule" is not satisfied for any of the claims in issue and, accordingly, the district court properly granted summary judgment.

## ARGUMENT

I. THE DISTRICT COURT PROPERLY CONSTRUED THE CLAIM TERM "DOUBLE SIDED ADHESIVE LAYER" IN CLAIM 2 OF THE '480 PATENT GIVEN THAT THE '480 PATENT DISTINGUISHES BETWEEN A "LAYER OF ADHESIVE" AND A "DOUBLE SIDED ADHESIVE LAYER"

A. Claim Construction—Relevant Principles

In interpreting an asserted claim, a court looks first to the intrinsic evidence of record, specifically, the patent itself, including the claims, the specification and, if in evidence, the prosecution history. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995)(*en banc*), *aff'd*, 517 U.S. 370, 116 S. Ct. 1384, 134 L. Ed. 2d 577 (1996). The claims themselves provide substantial guidance as to the meaning of particular claim terms. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314, citing *Vitronics v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). The descriptive part of the specification aids in ascertaining the scope and meaning of the claims inasmuch as the words of the claims must be based on the description. *Id.* at 1315, citing *Standard Oil Co. v. Am. Cyanamid Co.*, 774 F.2d 448, 452 (Fed. Cir. 1985). In case of doubt or ambiguity it is proper in all cases to refer back to the descriptive portions of the specification to aid in solving the doubt or in ascertaining the true intent and meaning of the language employed in the claims. *Id.*, citing *Bates v. Coe*, 98 U.S. 31, 38, 25 L. Ed. 68 (1878). Like the specification, the prosecution history provides evidence of how the Patent Office

and the inventor understood the patent (*Id.*, at 1317, citing *Lemelson v. Gen. Mills, Inc.*, 968 F.2d 1202, 1206 (Fed. Cir. 1992)), and should be considered if it is in evidence (*Id.*, citing in part *Markman*, 52 F.3d at 980).

Differences among claims are used in understanding the meaning of particular claim terms. *Laitram Corp. v. Rexnord, Inc*., 939 F.2d 1533, 1538 (Fed. Cir. 1991). Differences in claims are intended when the inventor chooses to employ different words from claim to claim. *CAE Screenplates, Inc. v. Heinrich Fiedler GmbH & Co. KG*, 224 F.3d 1308, 1317 (Fed. Cir. 2000); *Tandon Corp. v. United States Int'l Trade Comm'n*, 831 F.2d 1017, 1023 (Fed. Cir. 1987). Absent evidence to the contrary, courts must presume that the use of different terms among claims connotes different meanings. *Id.* This doctrine of claim differentiation favors the construction of a claim term that does not render a different claim term superfluous. *D.M.I, Inc.. v. Deere & Co.*, 755 F.2d 1570, 1574 ( Fed. Cir. 1985); See also, *Autogiro Co. of America v. The United States*, 384 F.2d 391, 404 (Ct. Cl. Oct. 13, 1967).

B.    Claim Construction—The '480 patent—Double Sided Adhesive Layer

Looking at the claim itself, including the claims and the specification, claim 2 clearly distinguishes between a "layer of adhesive" and a "double sided adhesive layer." The inventor clearly used different terms to describe different concepts related to the adhesive.

17

Claim 1 refers to "a layer of pressure sensitive adhesive," claim 2 (at issue) refers to "a double sided adhesive layer," and claim 5 simply refers to "a layer of adhesive." These different words or terms have different meanings. Claim 1 differs from claim 5 in that claim 1 is limited to a layer of pressure sensitive adhesive, while claim 5 does not specify the type of adhesive comprising the layer. Claim 2 differs from claim 5 in that claim 5 simply requires a layer of adhesive, while claim 2 requires a layer of "double sided adhesive." Claim 2 distinguishes even further from claim 1 in that claim 1 is limited to a pressure sensitive adhesive, while claim 2 does not specify the type of adhesive, but does require that it be a "double sided adhesive."

Looking only at the claims, ShieldMark's proffered construction (i.e., a layer with adhesive on both sides, (JA 438) (R. 42, ShieldMark's Opening Claim Construction Brief, PageID #475) was properly rejected by the district court. It ignores the significance of the "double sided" limitation of claim 2. Rather, it advances that a "double sided adhesive layer" is simply "a layer with adhesive on both sides," but any layer of adhesive has adhesive on both sides. The "layer of pressure sensitive adhesive" of claim 1 would have adhesive at both the top and bottom of the layer. The same is true for the "layer of adhesive" of claim 5. The use of the term "double sided" to define the adhesive layer of claim 2 must be

different.  Claim differentiation requires it.  Why else would the patent applicant have chosen to further characterize the term by the words "double sided"?

In the patent specification of the '480 patent at Col. 1, ll. 48-49 and 61-62 (JA 23)(R. 1-1, PageID # 6), the patent speaks generally of a "layer of adhesive material" or more particularly of a "layer of pressure-sensitive adhesive material."  There is no reference at all to the restriction of being "double sided."  However, when describing a preferred embodiment of the invention, the patent specifies a "double sided carpet tape (Product #591B) from International Tape Co., P.O. Box 240, Six Industrial Drive, Windham, NH 03087."  Col. 2, ll. 40-42. (JA 23)(R. 1-1, PageID # 6).  Cardinally, this removes all doubt as to what was intended by a "double sided adhesive."  The specification sheet for this very product (JA 421A-421B) (R. 41-4, Exhibit, ITC web page, PageID ## 379-380) expressly identifies this double sided tape as a "double coated cloth tape…manufactured on a blue polyethylene liner…[u]sed widely for carpet installations."  (JA 421A-421B) (R. 41-4, Exhibit, ITC web page, PageID ## 379-380).  Simply put, a double sided adhesive layer, in the context of the '480 patent, is a special type of adhesive layer…not simply "a layer that has adhesive on both sides."  As apparent from the patent itself, and the double sided carpet tape disclosed therein, a "double sided adhesive layer" is "a layer of non-adhesive material [such as cloth in the product specification (R. 41-4 Exhibit, ITC web page, PageID ## 379-380)] with adhesive on both sides."

The lower court did not import "a non-adhesive material" as an additional element into the claim as ShieldMark argues. Rather, that element is inherent in a double sided adhesive layer, as evident from the patent specification's reference to a double sided carpet tape as an example. Thus, the specification is totally consistent with the interpretation of the "double sided adhesive" as requiring "a layer of non-adhesive material with adhesive on both sides."

ShieldMark mischaracterizes *Tandon Corp. v. U.S. Int'l Trade Comm'n*, 831 F.2d 1017 (Fed. Cir. 1987). There, this Court affirmed claim differentiation as a tool for claim construction, noting that "[t]here is presumed to be a difference in meaning and scope when different words or phrases are used in separate claims." *Id.* at 1023. However, in *Tandon*, claim differentiation was negated by (1) the applicants' express declaration of the nature of the invention, without reference to a particular claim, (2) the presence of other common express limitations in the claims requiring a consistent construction of the term in issue, and (3) the express teachings of the specification. *Id.*, at 1023. None of that pertains here, where the differences of the claim terms are consistent with the patent specification and claims, and no declarations to the contrary were made by applicant.

II.    THE DISTRICT COURT, HAVING PROPERLY CONSTRUED THE CLAIM TERM "DOUBLE SIDED ADHESIVE LAYER" IN CLAIM 2, AND FINDING NO DISPUTE THAT THE ACCUSED PRODUCTS DO NOT HAVE THE "DOUBLE SIDED ADHESIVE LAYER" OF CLAIM 2, PROPERLY CONCLUDED THAT THERE IS NO GENUINE ISSUE OF FACT FOR A JURY WITH RESPECT TO WHETHER INSITE'S ACCUSED PRODUCTS LITERALLY INFRINGE CLAIM 2

Claim 2 of the '480 patent requires "a double sided adhesive layer," (JA 24)(R. 1-1, PageID # 7, Col. 4, l. 32), and the district court properly construed the limitation as requiring "a layer of non-adhesive material with adhesive on both sides" (JA 172)(R. 54, Memorandum Opinion and Order, PageID #1144). However, the accused products of InSite do not contain "a layer of non-adhesive material with adhesive on both sides," but rather contain a single layer of adhesive with no non-adhesive constituent part. (JA 191-192)(R. 59-1, Lowe Declaration, Exhibit A, PageID ## 1173-1174, ¶¶ 4-6). Accordingly, the "all elements rule" is not satisfied for claim 2, and there can be no literal infringement of claim 2 or any claims dependent therefrom. The "all elements rule" holds that an accused product or process is not infringed unless it contains each element or limitation of a claim, either literally or by an equivalent. *Freedman Seating Co., v. American Seating Co.*, 420 F.3d 1350, 1358 (Fed. Cir. 2005), citing, *Warner–Jenkinson*, 520 U.S at 29, 117 S. Ct. 1040 and *Kustom Signals, Inc. v. Applied Concepts, Inc.*, 264 F.3d 1326, 1333 (Fed. Cir. 2001).

III.   THE DISTRICT COURT PROPERLY CONCLUDED THAT THERE IS
NO GENUINE DISPUTE OF MATERIAL FACT FOR A JURY WITH
RESPECT TO WHETHER INSITE'S ACCUSED PRODUCTS
INFRINGE CLAIM 2 UNDER THE DOCTRINE OF EQUIVALENTS
BECAUSE ALLOWING "ADHESIVE" AS AN EQUIVALENT FOR
"DOUBLE SIDED ADHESIVE LAYER" WOULD VITIATE THAT
ELEMENT

Two principles espoused by this Court are determinative of whether the

district court properly concluded that there is no genuine issue of material fact for a

jury with respect to whether InSite's accused products infringe claim 2 of the '480

patent under the doctrine of equivalents.  This Court has held that the "all elements

rule" has two primary implications for the doctrine of equivalents. The first is that

the "all elements rule" requires that equivalence be assessed on a limitation-by-

limitation basis, as opposed to from the perspective of the invention as a whole.

*Id.*, citing in part *Warner–Jenkinson*, 520 U.S. at 29, 117 S. Ct. 1040 ("Each

element contained in a patent claim is deemed material to defining the scope of the

patented invention, and thus the doctrine of equivalents must be applied to

individual elements of the claim, not to the invention as a whole.").  The second is

that an element of an accused product or process is not, as a matter of law,

equivalent to a limitation of the claimed invention if such a finding would entirely

vitiate the limitation. *Id.*, citing *Warner–Jenkinson*, 520 U.S. at 29, 117 S. Ct. 1040

("It is important to ensure that the application of the doctrine [of equivalents], even

as to an individual element, is not allowed such broad play as to effectively

22

eliminate that element in its entirety."); *Lockheed Martin Corp. v. Space Sys./Loral, Inc.*, 324 F.3d 1308, 1321 (Fed. Cir. 2003) ("[I]f a court determines that a finding of infringement under the doctrine of equivalents 'would entirely vitiate a particular claim[ed] element,' then the court should rule that there is no infringement under the doctrine of equivalents." (citation omitted)); and *Bell Atl. Network Servs., Inc. v. Covad Communications Group, Inc.*, 262 F.3d 1258, 1279–80 (Fed. Cir. 2001).

ShieldMark argues that the district court should have allowed ShieldMark to present evidence that the "adhesive" of the accused products is the equivalent of the "double sided adhesive layer" element of claim 2. ShieldMark advances the doctrine of equivalents in such a way that it would vitiate the claim requirement of "a layer of non-adhesive material" that the district court properly found as an essential requirement in its claim construction of the term "double sided adhesive layer." (JA 164-165)(R. 54, Memorandum Opinion and Order, PageID ##1136-1137). The accused product does not have the required "layer of non-adhesive material," and no reasonable juror could find infringement under the doctrine of equivalents because such a finding would eviscerate the express requirement that "a layer of non-adhesive material" be present.

ShieldMark cites *Deere & Co. v. Bush Hog, LLC*, 703 F.3d 1349 (Fed. Cir. 2012), but ignores its applicable law. There, this Court reaffirmed that "courts properly refuse to apply the doctrine of equivalents 'where the accused device contain[s] the antithesis of the claimed structure.' (citation omitted) In such a case, application of the doctrine of equivalents would 'vitiate' a claim element." (citing *Warner-Jenkinson*, 520 U.S. at 39 n.8). *Deere*, 703 F.3d at 1356. Here, the construed claim limitation of "a layer of non-adhesive material" is clearly the antithesis of "no layer of non-adhesive material," which is characteristic of the accused products. The district court properly exercised its role "to ensure that the doctrine of equivalents is not permitted to overtake the statutory function of the claims in defining the scope of the patentee's exclusive rights." (citation omitted). *Deere*, 703 F.3d at 1357.

IV.    BECAUSE THE DISTRICT COURT PROPERLY FOUND THAT THERE IS NO GENUINE DISPUTE OF MATERIAL FACT FOR A JURY WITH RESPECT TO WHETHER INSITE'S ACCUSED PRODUCTS INFRINGE CLAIM 2 UNDER THE DOCTRINE OF EQUIVALENTS, NO DISCUSSION OF THE FUNCTION- WAY-RESULT TEST WAS NECESSARY

In light of the legal principles discussed in section III above, no further discussion of the application of the doctrine of equivalents (i.e., the function-way-result test) need be had. *Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 469

F.3d 1005, 1017 (Fed. Cir. 2006), citing *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 39 n.8, 117 S. Ct. 1040, 137 L. Ed. 2d 146 (1997):

> [U]nder the particular facts of a case, ... if a theory of equivalence would entirely vitiate a particular claim element, partial or complete judgment should be rendered by the court, as there would be no further *material* issue for the jury to resolve. (emphasis in original).

Further, addressing doctrine of equivalents issues, the district court properly opined:

> To find for Plaintiff on this issue, the Court would have to find that the claim term "double-sided adhesive" is substantially indistinguishable in function, way, and result, from a "layer of adhesive," which is present in the accused product. As set forth in the Court's claim construction opinion, however, claim differentiation requires the Court to recognize consequential differences in claims when the inventor uses different words in separate claims. *CAE Screenplates, Inc. v. Henrich Fiedlern GmbH & Co. KG*, 224 F.3d 1308, 1317 (Fed. Cir. 2000); *Tandon Corp. v. United States Int'l Trade Comm'n*, 831 F.2d 1017, 1023 (Fed. Cir. 1987). Because the '480 Patent distinguished the "double sided adhesive layer" in Claim 2 from the layers of "adhesive material" described in Claims One and Five, recognizing an adhesive layer that does not fit the definition of "double sided adhesive layer" as an equivalent would render the language in Claim 2 superfluous and would violate the principle of claim differentiation. *Id.*

(JA 8)(R. 92, Memorandum Opinion and Order, PageID # 1763).

V.     THE DISTRICT COURT PROPERLY CONSTRUED THE CLAIM TERM
       "SUBSTANTIALLY UNIFORM THICKNESS" OF CLAIM 5 OF THE
       '480 PATENT AND CLAIM 1 OF THE '292 PATENT AS "A LARGELY,
       BUT NOT NECESSARILY WHOLLY, UNIFORM DISTANCE
       BETWEEN THE UPPER SURFACE AND THE LOWER SURFACE
       WITHOUT SIGNIFICANT DEVIATIONS, PROTRUSIONS OR
       STEPS" GIVEN THAT SHIELDMARK CONTENDED AND THE
       PROSECUTION HISTORY CONFIRMS THAT THE LIMITATIONS
       WERE PART OF THE DEFINITION AS UNDERSTOOD BY THE
       PATENT OFFICE AND WERE NECESSARY TO OVERCOME PRIOR
       ART AND OBVIOUSNESS ISSUES RAISED BY THAT OFFICE

    A.     Claim Construction—Relevant Principles

       The phrase "substantially uniform thickness" does not appear in the

specification of the '480 patent except for its use in claim 5.  The term was added

to the claim that eventually issued as claim 5 early in the prosecution history in

response to a rejection in light of U.S. Patent Number 5,839,977 to Maurer.  (JA

444-445)(R. 42, ShieldMark's Opening Claim Construction Brief, PageID ## 481-

82, referencing Exhibit A-2, Amendment B and Response to Office Action dated

January 12, 2006).  ShieldMark also made arguments to the Patent Office as to

what the term "substantially uniform thickness" means in the context of the claim.

(JA 422-433)(R. 41-8, Exhibit 8, PageID ## 403-414).  The amendment and

arguments should be taken into consideration in construing the term, as did the

district court having had the prosecution history before it.   The prosecution

history, like the specification, provides evidence of how the Patent Office and the

inventor understood the patent (*Phillips*, at 1317, citing *Lemelson v. Gen. Mills,*

26

*Inc.*, 968 F.2d 1202, 1206 (Fed. Cir. 1992)), and should be considered if it is in evidence (*Id.*, citing in part *Markman*, 52 F.3d at 980).  The prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention, and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be.  *Id.*, citing *Vitronics*, 90 F.3d at 1582-83.

Also relevant here is that, "the words of a claim 'are generally given their ordinary and customary meaning'" (*Id.*, citing *Vitronics*, 90 F.3d at 1582) and that dictionaries are particularly useful in determining the ordinary and customary meaning of claim terms (*Id.*, citing *Texas Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1202 (Fed. Cir. 2002).  In some cases the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words.  *Id.* at 1314, citing *Brown v. 3M*, 265 F.3d 1349, 1352 (Fed. Cir. 2001).

> B.    Claim Construction—The '480 patent—Substantially Uniform
> Thickness

ShieldMark admits having amended its original claim that eventually issued as claim 5 to call for a "substantially uniform thickness" in view of the Maurer reference which describes an applique as including "steps."  (JA 444)(R. 42, ShieldMark's Opening Claim Construction Brief, PageID # 481, referencing

Exhibit A-2, Amendment B and Response to Office Action dated January 12,

2006). ShieldMark acknowledges arguing that the abruptly increasing thicknesses

of the steps failed to anticipate the amended claim, and ShieldMark's argument

was found persuasive. (JA 444)(R.42, ShieldMark's Opening Claim Construction

Brief, PageID # 481, referencing R. 42-3 Exhibit A-2, Amendment B and

Response to Office Action dated January 12, 2006, PageID ## 567-575 at page 5

(PageID # 571)).

ShieldMark further admits to having responded to a subsequent rejection in

which the Patent Office determined that it would be obvious to modify an applique

with protrusions by removing the protrusions to arrive at the recited "substantially

uniform thickness." (JA 444-445)(R.42, ShieldMark's Opening Claim

Construction Brief, PageID ## 481-82, referencing R. 42-3, Exhibit A-2, Pre-

Appeal Request for Review dated June 22, 2006, PageID ## 590-594, at page 2

(PageID # 592)). ShieldMark acknowledges overcoming the rejection by equating

"removing the protrusions" with "substantially uniform thickness." (JA 444-

445)(R. 42, ShieldMark's Opening Claim Construction Brief, PageID ## 481-82,

referencing Exhibit A-2, Pre-Appeal Request for Review dated June 22, 2006,

PageID ##590-594, at page 2 (PageID # 592)).

Additional argument was made by ShieldMark to the Patent Office as to

what the term "substantially uniform thickness" means in the context of the claim

through a declaration from an expert witness, Joseph T. Mausar. (JA 422-433)(R.

41-8, Exhibit 8, Mausar Declaration, PageID ## 403-414). There, Mr. Mausar

stated at ¶13:

> The chart on page 7 of the filed application indicates that 10 measurements of the textured sample without liners averaged 65.4 mils with a standard deviation of 0.5 mil. The standard deviation of 0.5 mil as a percentage of the indicated thickness is a 0.76% variation. As 0.5 mil is one standard deviation, or 1 Sigma, 66% of all areas of the sample were within 0.5 mil in thickness. At a variation of 1.0 mils, a variation of 2.3%, this variation would equate to 3 Sigma or a 99+% of all areas of the sample were within 1.5 mils in thickness. **This indicates the substantial uniformity of thickness of the samples.** (Emphasis added).

Clearly, ShieldMark told the Patent Office through its expert that all measurements

are the same or within a narrow range, as well as the fact that there are no

"intentional significant deviations or steps" in the thickness of the polymer layer

from one edge to the other (JA 94)(claim construction as offered by InSite, R. 41,

PageID # 361) or "protrusions or steps" (JA 111)(claim construction as offered by

ShieldMark, R. 42, PageID # 480). Indeed, ShieldMark's expert, Mr. Mausar,

recognized that the range was far more than "largely" as advanced by ShieldMark

and adopted by the district court, in stating that over 99% of all of the areas of the

sample were within a 1.5 mils range in thickness.

   In construing the term "substantially uniform thickness," the district court

acknowledged the parties' representation as to the prosecution history. (JA

169)(R.54, Memorandum Opinion and Order, PageID #1141). The district court

also acknowledged that the parties agreed, and jointly defined thickness as "a

distance between the upper surface and the lower surface." (JA 169)(R.54,

Memorandum Opinion and Order, PageID #1141). The district court, finding the

general ordinary definition of "substantially" to be "to a great or significant extent"

or "essentially", and the word to be used in several places in the patent including at

column 2, line 65 ("substantially improved", column 3, lines 7 ("substantially

increased") and 23 ("substantially increased") to be "used as a modifier to indicate

a great deal of improvement or a significant increase, or to indicated [sp]

improvement and increase without setting forth any precise amount that is

required," determined that "substantially should be defined as "largely, but not

necessarily wholly." (JA 167-168)(R.54, Memorandum Opinion and Order,

PageID ## 1139-40). The district court also determined that "the word 'uniform'

is a term that is clear to the general public and should be construed according to its

ordinary and customary meaning without imposing any limitations or restrictions

not specifically included in the claim language itself." (JA 168)(R.54,

Memorandum Opinion and Order, PageID #114). Therefore, the district court

properly construed the term "substantially uniform thickness" to mean a "largely,

but not necessarily wholly, uniform distance between the upper surface and the

lower surface without significant deviations, protrusions, or steps," taking into

consideration the prosecution history and applying basic rules of claim

construction. Notably, this construction was quite akin to that advanced by ShieldMark: "largely but not wholly same distance between the upper surface and lower surface without protrusions or steps." (JA 154)(R. 50, Shieldmark's Responsive Brief to Defendant's Opening Brief on Claim Construction, PageID# 1101). ShieldMark can hardly argue against the construction declared by the district court or its finding of non-infringement.

C.   Claim Construction—The '292 Patent—Substantially Uniform Thickness

The '292 patent states on its face that it is a continuation of the patent application that issued as the '480 patent. (JA 26)(1:13-cv-572, R. 1-1, the '292 patent, PageID #6). The two patents have the same inventor, same assignee, same specification and same drawing. (JA 26-32)(Compare R. 4-1, claim, PageID ##19-24 and (JA 63-68) 1:13-cv-572, R.1-1., the '292 patent, PageID ## 6-12). The public record of the '292 patent, available at http://portal.uspto.gov/pair/PublicPair, shows that claims 1-3 of the '292 patent were allowed as filed, without comment or action impacting their scope or meaning. Both claim 5 of the '480 patent and claim 1 of the '292 patent have the claim limitation of "a polymer layer having …a substantially uniform thickness." (JA 31)(R. 4-1, claim, PageID #22 and (JA 65) 1:13-cv-572, R.1-1., the 292 patent, PageID #11).

Claim construction of a continuation patent, such as here, may also typically involve reliance on the prosecution history of the parent application. *Microsoft*

31

*Corp. v. Multi-Tech Sys. Inc.*, 357 F.3d 1340, 1349 (Fed. Cir. 2004); *Datamize LLC v. Plumtree Software, Inc.*, 417 F.3d 1343, 1353 (Fed. Cir. 2005); *Ormco Corp. v. Align Technology, Inc.*, 498 F.3d 1307, 1314 (Fed. Cir. 2007). The district court considered the parties' arguments regarding that prosecution history when construing the term "substantially uniform thickness" at issue in the 1:12-cv-223 case. (JA 169)(R. 54, Memorandum Opinion and Order, PageID # 1141). Because courts "must interpret the claims consistently across all asserted patents", the district court did not err in construing the "substantially uniform thickness" in the 1:13-cv-572 case as it did in the 1:12-cv-223 case, namely as meaning "a largely but not necessarily wholly uniform distance between the upper surface and the lower surface without significant deviations, protrusions or steps."

> D.    InSite's Accused Products Do Not Infringe Either Claim 5 of the '480 patent or Claim 1 of the '292 patent Because They Have a Significant Step And Therefore Do Not Satisfy The Limitation "Substantially Uniform Thickness" As Properly Construed

Claim 5 of the '480 patent and claim 1 of the '292 patent require a polymer layer having a "substantially uniform thickness." (JA 65)(R. 4-1, claim, PageID #22 and (JA 31) 1:13-cv-572, R. 1-1., the 292 patent, PageID #11). The district court properly construed that limitation as requiring "a largely but not necessarily wholly, uniform distance between the upper surface and the lower surface without significant deviations, protrusions or steps." The district court further properly found that the accused products of InSite have a polymer layer that does not

demonstrate a uniform distance between the upper surface and the lower surface without significant deviations, protrusions or steps, but rather one that actually is characterized by significant deviations, protrusions, or steps.  (JA 192)(R. 59-1, Lowe Declaration, Exhibit A, PageID # 1174, ¶7).

As shown in the cross-sectional views of the accused products of InSite (JA 194-195)(R. 59-1, Exhibits B, C, and D of tapes 2", 4" and 6" wide, PageID ## 1176-1178), and as further attested in the Lowe Declaration, InSite's products incorporate an extensive central recess defined between steps extending along the lateral edges of the underside of the polymer layer (JA 192)(R. 59-1, Lowe Declaration, Exhibit A, PageID # 1174, ¶8).  Moreover, the polymer layer is characterized by tapered lateral edges that take the thickness of the polymer layer from a center thickness of 0.027" to an edge height of zero and does so through a transitional radius of 0.187" and a tapering angle of 22°.  (JA 192)(R. 59-1, Lowe Declaration, Exhibit A, PageID #1174, ¶9).

The district court also properly found that the recess, steps, radius and taper are both structurally and functionally significant.  (JA 192)(R. 59-1, Lowe Declaration, Exhibit A, PageID # 1174, ¶10).  The recess defined between the steps is provided to maintain an adhesive for securing the product to a floor surface while precluding the adhesive from oozing out onto the floor beyond the product. (JA 193)(R. 59-1, Lowe Declaration, Exhibit A, PageID # 1175, ¶11).  The recess

and steps are 0.005" deep, which is a significant 18.5% of the 0.027" thickness of the polymer layer. (JA 193)(R. 59-1, Lowe Declaration, Exhibit A, Page ID # 1175, ¶12). The non-uniform nature of the polymer layer is significant for at least the reasons that (a) the steps and recess provide a container for the adhesive so that the area beneath the tapered edges can lie flat against the floor, without a layer of adhesive lifting them from the floor where they might be engaged by pallets, or equipment such as forklifts, (b) the 22° taper blends directly into the floor, with no flat abutting edge, helping to eliminate pallet dragging or equipment damage, and (c) the radiused transition of 0.187" further accommodates skids, pallets and equipment with minimal risk of damage. (JA 193)(R. 59-1, Lowe Declaration, Exhibit A, PageID # 1175, ¶13).

The district court properly noted an absolute dearth of evidence advanced by ShieldMark to challenge the presence of significant steps in accused products. While ShieldMark's expert inexplicably addressed the steps in terms of their area and weight, the district court properly found:

> The significance of a feature must be determined in the context of the element which is modified by that feature. In this case, the element is the thickness of the product. Neither weight nor area specifications within the '480 or '292 Patents are modified by the phrase "without significant deviations, protrusions or steps." This limitation applies only to the thickness of the product. Dr. Serra's report does not address the significance of the steps and tapering of the accused product relative to the overall thickness of the product.
> Dr. Serra himself admitted in his deposition that the claim limitation at issue speaks to the thickness of the product; that

thickness correlates to the cross-sectional height of the polymer; that a step is normally considered in context of height; and, that although he did measure the height of the steps on the accused product and used this in his calculations, he did not base his conclusions on the height of the steps. (ECF #19-1, Serra Depo, at 44-45, in Case Number 13 CV 572). Dr. Serra also admitted that he accepted and relied on Mr. Lowe's calculation that the height of the steps is 18.5% of the overall thickness of the accused product. (*Id*.). He did, however, understand that Mr. Lowe, whose testimony was provided by way of Declaration in support of Defendant's Motion for Summary Judgment, and was available prior to Dr. Serra's submission of his expert report, thought that the functionality of the steps was "quite significant." (*Id.*) Nonetheless, Dr. Serra did not choose to counter this conclusion, or otherwise address the issue in his expert report.

(JA 13-14)(R.92, Memorandum Opinion and Order, PageID # 1768-1769). This was not an issue taken from the jury, but one clearly unattended and conceded by ShieldMark.

Given the district court's finding that the accused products have significant steps, summary judgment of literal non-infringement was clearly appropriate for the "all elements rule" could not be satisfied. The accused products do not have the limitation "substantial uniform thickness." If any claim limitation is absent from the accused product, there is no literal infringement as a matter of law." *Cephalon, Inc. v. Watson Pharms., Inc.*, 707 F.3d 1330, 1340 (Fed. Cir. 2013).

# CONCLUSION

In light of the foregoing, the Judgment Order of the district court entering summary judgment in favor of InSite and dismissing the cases here on appeal should be affirmed.

Respectfully submitted,
/s/ *Ray L. Weber*
Ray L. Weber       (0006497)
Laura J. Gentilcore (0034702)
RENNER, KENNER, GREIVE, BOBAK,
    TAYLOR & WEBER
106 South Main Street, Suite 400
Akron, Ohio 44308
Telephone:  (330) 376-1242
Email: rlweber@rennerkenner.com
Email: ljgentilcore@rennerkenner.com

*Attorneys for Appellee, InSite Solutions, LLC*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 8th day of May, 2014, I caused this Corrected

Brief of Appellee to be filed electronically with the Clerk of the Court using the

CM/ECF System, which will send notice of such filing to the following registered

CM/ECF users:

W. Scott Harders
Martin J. Pangrace
BRENNAN, MANNA & DIAMOND, LLC
75 E. Market Street
Akron, OH 44308
(330) 253-5060

Mark B. Cohn
DUBYAK CONNICK THOMPSON & BLOOM, LLC
3401 Enterprise Pkwy., Suite 205
Cleveland, OH 44122
(216) 364-0500

*Counsel for Appellant*

Upon acceptance by the Clerk of the Court of the electronically filed

document, the required number of copies of the Corrected Brief of Appellee will

be hand filed at the Office of the Clerk, United States Court of Appeals for the

Federal Circuit in accordance with the Federal Circuit Rules.

*/s/ Ray L. Weber*
*Counsel for Appellee*

# CERTIFICATE OF COMPLIANCE

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[ X ] this brief contains [*7,884*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[    ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

[    ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: May 8, 2014                          */s/ Ray L. Weber*
                                             *Counsel for Appellee*